```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

Tamara K. Gallo, et al.,         :

      Plaintiffs,           :

   v.                            :       Case No. 2:11-cv-680

E.I. DuPont De Nemours and       :       JUDGE ALGENON L. MARBLEY
Company, et al.,                         Magistrate Judge Kemp
                                 :
      Defendants.

<u>OPINION AND ORDER</u>

    This case is a putative class action involving an herbicide manufactured by defendant DuPont and which was sold under the registered trade name "Imprelis."  According to the complaint (and a number of other similar complaints filed in various courts around the country), Imprelis killed not only the weeds it was designed to eradicate, but a good bit of other plant life as well, including mature trees which were located near sites where Imprelis was applied.  When the complaint was filed, DuPont was still marketing Imprelis, but since that time all marketing of the product has ceased and it has been recalled.

    Shortly after the case was filed, and well before the defendants' answers are due, plaintiffs filed a motion asking that the Court both allow expedited discovery and order DuPont to stop communicating with potential class members.  The former request is now fully briefed (DuPont responded to both matters in its memorandum in opposition, but the reply brief addresses only the discovery issue).  For the following reasons, the Court will deny the request for expedited discovery.

I.

    When the motion for expedited discovery was filed, Imprelis was still being sold and applied as an herbicide for turf.  In fact, it apparently had been marketed as the first real advance

in turf herbicides in many years.  According to the complaint, however, the unexpected adverse effects of its use began to appear almost immediately, leading DuPont to issue a series of communications about the nature of the problems which landowners were experiencing and the possible causes of those problems.  By July 27, 2011, DuPont had announced that it was considering some type of remediation and claims program.  Plaintiffs, believing that whatever DuPont was proposing would not be sufficient to solve the problems it had allegedly created, were, according to their supporting memorandum filed on July 29, 2011, considering moving for preliminary injunctive relief.  At the same time, however, they recognized that a number of similar cases had been filed and that an effort was underway to have all of these cases consolidated and transferred to the Judicial Panel on Multidistrict Litigation for coordinated pretrial proceedings.

To prepare for the filing of a preliminary injunction motion, and for other reasons discussed more fully below, plaintiffs proposed, in their motion, that they be allowed to request documents from DuPont prior to the time that discovery would ordinarily commence, which is on or after the date of the meeting of the parties required by Fed.R.Civ.P. 26(f).  Their motion listed eighteen separate categories of documents they wished to ask for, and described this list as a "limited" document production.  At a telephone conference held among the Court and counsel, plaintiffs stated that they would probably be satisfied, at least initially, with the production of studies which DuPont submitted to the United States Environmental Protection Agency.

The landscape has changed somewhat since the motion was filed. According to the parties' subsequent filings, on August 4, 2011, DuPont voluntarily suspended further sales of Imprelis, and a week later, the EPA issued a "Stop, Sale, Use, or Removal

Order" which effectively precludes any further sales of the product. DuPont argues that these actions nullify any need for the plaintiffs to move for a preliminary injunction, and it contends that there is no other basis for ordering early discovery - or, for that matter, permitting any discovery pending the transfer of the case to the MDL, although it has not filed a formal motion for a stay of proceedings pending that anticipated transfer. In their reply, plaintiffs take issue with the notion that there is no longer a need for expedited discovery, and reiterate their desire to have at least the studies which DuPont submitted to the EPA produced early on. They have also made various proposals which, in their view, respond to DuPont's concern about the potential for duplicative and inconsistent proceedings with respect to that production. These arguments frame the issue which the Court must now decide.

II.

One of the issues which frequently arises when a case is awaiting transfer to the JPML is what proceedings, if any, ought to occur while the case is pending in a potential transferor court. Often, all such proceedings, even the filing of responsive pleadings, are stayed on the theory that once the transfer is ordered and a transferee court is selected, any pretrial issues are better handled by that court in the course of consolidated proceedings. Many times the parties agree to a stay, but occasionally, they have differing views about whether a stay is appropriate.

Here, although the motion for expedited discovery seems to raise an issue which is conceptually distinct from the issue of whether this case should be stayed pending transfer, the difference between the two is largely illusory. Although it is true that DuPont has not yet answered, which is one of the events (although not the only one) which triggers the issuance of a

-3-

notice of initial Rule 16 conference from the Court, plaintiffs are responsible to some extent for the absence of an answer, having elected to send DuPont a waiver of service rather than making service when the complaint was filed.  Had plaintiffs done the latter, the answer date would already have passed, the Court would likely have scheduled the initial Rule 16 conference, and the Rule 26(f) meeting of the parties - the triggering event for discovery - would be imminent or would already have occurred.  For that matter, now that counsel have appeared for DuPont, the Court could easily schedule an initial Rule 16 conference and set into motion the events that would allow plaintiffs to propound discovery without the need for the Court to accelerate that process.  Thus, the real issue here is not so much whether plaintiffs should be allowed to serve their discovery somewhat earlier than the Rules of Civil Procedure contemplate, but whether they should be permitted to do any discovery for whatever period of time the case remains pending in this Court.

As DuPont points out, the Court has recently dealt with a similar issue in the related cases of Hall v. General Elec. Co., Case No. 2:07-cv-942 (S.D. Ohio) and Hagwood v. General Elec. Co., Case No. 2:07-cv-548 (S.D. Ohio).  In orders issued in both cases on December 4, 2007, the Court granted in part and denied in part a motion to stay the cases pending transfer to the JPML.  In both Hall and Hagwood, for reasons of judicial economy and efficiency, and in order to avoid inconsistent or duplicative proceedings, the Court ordered that

> Any pretrial proceeding which can reasonably be deferred or which would create a significant risk of duplicative discovery proceedings or inconsistent pretrial rulings [be] stayed until a decision on the motion to transfer is made by the Judicial Panel on Multidistrict Litigation.

See Hagwood v. General Elec. Co., 2007 WL 4287655, *2 (S.D. Ohio

December 4, 2007).  The Court adopted the test set out in Rivers v. The Walt Disney Co., 980 F.Supp. 1358 (C.D. Cal.1997), which focuses on whether a stay will prejudice the plaintiff, whether the refusal to order a stay will prejudice the defendant, and "the extent to which judicial economy and efficiency would be served by the entry of a stay."  Id. at *1.  Such a stay is not, of course, automatic, see Barber v. BP, PLC, 2010 WL 2266760 (S.D. Ala. June 4, 2010), but "[d]uplication of case management tasks by multiple courts is not an economical use of judicial resources."  Fuller v. Amerigas Propane, Inc., 2009 WL 2390358, *2 (N.D. Cal. August 3, 2009).  The interest of the public, as well as that of the parties, is also a factor in the balancing test to the extent that the litigation touches upon issues of concern to the broader public.  See Dowler v. Medicine Shoppe, 2007 WL 2907519 (S.D. Ohio October 3, 2007).  The case law cited by the parties does not suggest a materially different legal standard under which to judge this issue.

There is no question that, in general, it is more efficient to defer discovery in a potential MDL case until all of the cases which will form part of the MDL are identified, transferred, and consolidated.  Once that occurs, lead counsel are usually appointed, and discovery such as the production of relevant documents is done once rather than on multiple occasions in response to not only multiple, but perhaps different, requests.  As part of the consolidated process, if any issues arise concerning either the propriety of the requests or the sufficiency of the responses, a single judge can make one ruling which will govern in all cases.  The disadvantages of allowing discovery to go forward in individual cases prior to transfer are obvious.

On the other hand, as the Court's subsequent order in the Hagwood case (see 2007 WL 4572451 (S.D. Ohio Dec. 26, 2007))

-5-

demonstrates, there are times when the possibility that relevant documents might be destroyed justifies limited discovery if the aim of that discovery is to preserve those documents for future proceedings.  Additionally, uncertainty over whether or when a transfer to the JPML will occur, or the likelihood of a substantial delay in that process, may also favor permitting some discovery to go forward.  And, as plaintiffs' supporting memorandum argues, if there is the possibility that injunctive relief will be necessary to prevent further harm to either the plaintiffs or the public and the issuance of such relief cannot await a transfer, any discovery necessary to the determination of that issue has to occur in the potential transferor court.  The question here is primarily whether, now that the product is off the market, the risk of harm without some type of injunctive relief is substantial enough to warrant ordering discovery here, even though it is clear that the subject of that discovery - the test results DuPont submitted to the EPA - will be common to all the Imprelis cases which have been or will be filed.

    The reply brief, which was filed after the EPA's stop order, sets forth plaintiffs' best arguments for discovery prior to transfer.  According to plaintiffs, there is, first of all, no undue burden to DuPont to produce the studies because they were already provided to the EPA and can be quickly retrieved with the push of a button.  Second, they note that the information will have to be produced eventually in the litigation no matter where it ends up being sent.  Third, they argue that despite the fact that Imprelis is no longer being sold, the harm that is has caused is ongoing and remediation is needed.  The sooner that remediation occurs, they argue, the sooner the harm will abate, and the way to get the case moving quickly toward resolution is to begin discovery now.  Plaintiffs argue that they may be able to assist the EPA in developing a remediation plan, or they may

be able to make an early demand on DuPont to resolve the case through a settlement that includes remediation.  They also have not abandoned the idea of seeking preliminary injunctive relief, and point out that if they do so, they will need to have the information they seek through discovery to support such a request.

These types of arguments are not unique to this case.  Many potential MDL cases involve either ongoing harm or present a strong case for an early settlement.  But the harm in most of these cases, as it appears to be in this one, is primarily financial, and it is unclear how delaying discovery for a short period of time might adversely affect the plaintiff class's ability to recover money damages, even if the damages are still increasing.  There is no solid evidence that the product has caused any human injury or that such a risk exists.  In short, this does not appear to be a case which, at this juncture, is a prime candidate for some type of preliminary injunctive relief.

This is also not a case where there is a substantial risk of evidence disappearing, or memories growing dim, if discovery does not begin immediately.  This case, and the other twenty-plus lawsuits, were filed with great dispatch after the alleged problems with Imprelis began to be noticed.  The studies which plaintiffs seek were submitted to the EPA and presumably will be maintained by that agency, so they will be available in their present format even if discovery does not begin immediately.  In short, the case that plaintiffs will be prejudiced by a delay in discovery is not a compelling one.

The Court recognizes that plaintiffs have offered to provide any discovery they receive to plaintiffs in other cases and to set up an online document depository.  They have also suggested that if DuPont is concerned about a protective order, an appropriate order can be negotiated now and applied to others who

want to view the documents. But that simply illustrates the problem with doing discovery here that will be sought by the plaintiffs in all of the potential MDL cases. There is no guarantee that any other group of plaintiffs will, in fact, agree to the terms of a protective order that these plaintiffs might find satisfactory, nor is there any mechanism in place to resolve this type of dispute. Further, there is no guarantee that the specific discovery sought by these plaintiffs will be the first discovery which lead counsel in an MDL might seek (although that is a fairly strong possibility); nevertheless, any initial discovery request in the MDL case will almost certainly differ from the one at issue now in at least some respects, and it is impossible to know whether the differences will be significant to the progress of discovery. Finally, if DuPont does raise objections to providing studies (and it has suggested that there are multiple studies and that they are voluminous), there is the possibility of inconsistent adjudications of any objections or motions to compel, as well as the chance that the same battles will have to be fought more than once, which subverts the interest in judicial economy which is typically furthered by a stay. Consequently, neither prejudice to DuPont nor a risk of duplicative and inconsistent adjudications, with the concomitant loss of judicial efficiency, can be ruled out.

    In the end, the balance of relevant factors favors a stay. The Court sees little benefit to plaintiffs from an immediate commencement of discovery, little prejudice to them from a delay, and some potential for harm to the defendants and the judicial interests involved in MDL proceedings if discovery proceeds on an independent track in this case. While the factors favoring a stay are not overwhelming, they predominate over the factors which underlie the plaintiffs' arguments. For that reason, the Court will deny plaintiffs' request for expedited discovery.

III.

Based on the above analysis, the Court denies plaintiffs' motion for expedited discovery (#4, part two).

IV.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge